UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE ODELL DRAKE,

    Plaintiff,                             Civil Action No. 15-11800

v.                                         HON. PAUL D. BORMAN
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Maurice Odell Drake ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #16] be DENIED, and that Defendant's Motion for Summary Judgment [Dock. #17] be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on March 7, 2012, alleging disability as of August 31, 2007 (Tr. 118). After the initial denial of benefits, Plaintiff requested an administrative

hearing, held on September 19, 2013 in Livonia, Michigan (Tr. 25). Administrative Law Judge ("ALJ") Richard L. Sasena presided. Plaintiff, represented by Barry Keller, testified (Tr. 30-46), as did Vocational Expert ("VE") Annette Holder (Tr. 47-50). On February 14, 2014, ALJ Sasena found Plaintiff not disabled (Tr. 19-20). On March 21, 2015, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on May 19, 2015.

## II. BACKGROUND FACTS

Plaintiff, born August 31, 1967, was 46 at the time of the ALJ's decision (Tr. 19-20, 118). He completed eighth grade and worked previously as a caterer, landscaper, and stocker (Tr. 156). He alleges disability due to depression, lower back problems, a right hand injury, a left foot fracture, and neck and right shoulder pain (Tr. 155).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by stating that Plaintiff was currently homeless* (Tr. 29).

Plaintiff then offered the following testimony:

He stopped working in August, 2007 after being hit by a car (Tr. 30). In his last job, he washed dishes and cleaned at a bar (Tr. 30). He had recently applied for restaurant work (Tr. 30). Due to back problems, he was unable to walk even one block without stopping (Tr. 31). He also experienced leg pain, left shoulder pain, and headaches (Tr. 31). The headaches were caused by carbon monoxide poisoning the previous autumn (Tr. 31-32). In addition to

the hospitalization for monoxide poisoning, he sought emergency treatment for pain approximately two years prior to the hearing (Tr. 32). He had not received any other treatment in the past two years (Tr. 33). He had been trying to obtain health care at a free clinic at the suggestion of his mother, but was unable to do so due to financial and transportation problems (Tr. 33-34).

Plaintiff received mail at his mother's apartment but lived at his sister's house (Tr. 34). At the time of the carbon monoxide incident, his daughter and grandson were living with him (Tr. 36). During Plaintiff's school years, he was placed in a "special remedial" program (Tr. 36). He left school after eighth grade (Tr. 36). He had been prescribed Mobic by an emergency room physician (Tr. 36-37).

In response to questioning by his attorney, Plaintiff reported that his sister's house was in foreclosure and the utilities had been shut off since April, 2013 (Tr. 37). He testified that he used candles for lighting and a grill for cooking (Tr. 37). He reported that he was driven to the hearing by a driver hired by his attorney (Tr. 38). He indicated that he had experienced insomnia since middle school (Tr. 38). He alleged that the insomnia caused daytime fatigue (Tr. 38). He reported taking naps at least once a day (Tr. 39). He stated that he recently lost 40 pounds due to stress (Tr. 39). He reported avoiding homeless shelters because they were not clean (Tr. 39). He testified that his sister came by once or twice a week to pick up his laundry (Tr. 39). He reiterated that he lacked the resources to obtain medical care, noting that his mother had recently been diagnosed with COPD; one sister was in rehabilitation and

the other had experienced a mild stroke; and his brother was incarcerated (Tr. 41).

In response to additional questioning by the ALJ, Plaintiff reported that he exercised by walking around the house (Tr. 41-42). He relied on his sister to grocery shop (Tr. 42). His income was limited to $200 each month in food stamps (Tr. 42). He received a $21,000 settlement in 2009 after the car accident but had used it to pay medical bills (Tr. 43). He smoked one-third to one-half a pack of cigarettes each day (Tr. 43). He denied the current use of alcohol or street drugs, but acknowledged the former use of street drugs (Tr. 44). He got along adequately with his family but did not have friends (Tr. 44). He acknowledged that a former girlfriend had completed a function report on his behalf in 2012 (Tr. 44). His back pain radiated into both legs (Tr. 44). On a scale of one to ten, he rated his back pain as a three to five and neck and arm pain, six or seven (Tr. 45).

### B.     Medical Evidence

#### 1. Treating Sources

An April, 2009 MRI of the lumbar spine showed a mild disc bulge at L4-L5 and moderate and severe neural foramina narrowing at L5-S1 (Tr. 220). Plaintiff sought treatment in July, 2011 for an unrelated condition, but reported chronic back pain (Tr. 254). Plaintiff again reported back pain in October and December, 2011 (Tr. 258, 286).

A February, 2012 social work assessment by Jeanette E. Godfrey, Ph.D. noted severe depression (Tr. 232). Plaintiff reported that he had been fired from numerous jobs after becoming "overwhelmed by emotions" (Tr. 232). Plaintiff reported that he lived with his

mother (Tr. 232). Dr. Godfrey diagnosed Plaintiff with a mood disorder (Tr. 232). Physical examination notes by Ruhy Banu, M.D. from the same month state that Plaintiff experienced back pain since a car accident four years earlier (Tr. 227, 289). Plaintiff reported ongoing back pain but no acute distress (Tr. 221). Dr. Godfrey's followup notes from the following month state that Plaintiff had failed to pursue psychiatric treatment or made recommended dietary changes (Tr. 231).

### 2. Consultative and Non-Examining Sources

In June, 2012, Hugh Bray, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting that Plaintiff had traveled alone by bus to the appointment (Tr. 236). Plaintiff reported that he received outpatient mental health care once a month (Tr. 236). He reported that he napped "sometimes," had a good appetite, and was able to do light housekeeping, shop, attend church, wash clothes, and cook simple meals (Tr. 237). Plaintiff admitted to a history of retail fraud and crack cocaine abuse (Tr. 237). He denied cocaine use since 2007 (Tr. 237).

Dr. Bray noted that Plaintiff was able to respond to instruction and positive criticism (Tr. 237). Dr. Bray concluded that Plaintiff had "no difficulty comprehending and carrying out simple directions" or "performing repetitive, routine, simple tasks" (Tr. 238). He found that Plaintiff would have mild difficulty "creating and maintaining good working relationships" or "getting along appropriately with the public" (Tr. 238). Dr. Bray assigned

Plaintiff a GAF of 66[1](Tr. 239).

The same day, Bina Shaw, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of right wrist, left shoulder, neck, and back pain since the car accident (Tr. 241). Plaintiff denied cognitive difficulties (Tr. 241). He brought a cane to the examination but did not use it (Tr. 242-243). Dr. Shaw observed a normal gait (Tr. 243). Plaintiff demonstrated full strength in all extremities (Tr. 243). Dr. Shaw concluded that Plaintiff was capable of lifting at least 30 pounds and could sit, stand, or walk for eight hours a day (Tr. 243). He noted that Plaintiff did not require the use of a cane (Tr. 243). Range of motion studies were normal (Tr. 244-245).

The following month, psychiatrist Ruqiya Tareen, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 61).

---

[1] GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

### 3. Evidence Admitted After the ALJ's February 14, 2014 Decision[2]

An August, 2007 CT of the cervical spine showed degenerative disc disease at C5-6 with a lateral disc protrusion[3] (Tr. 410). The same month, a CT of the lumbar spine showed degenerative disc disease creating disc space narrowing at L5-S1 (Tr. 411). In July, 2008, Plaintiff sought treatment for level "4 to 5" back and shoulder pain (Tr. 416). He reported that following his recovery from the August, 2007 car accident, he was jailed in December, 2007 for failure to make child support payments (Tr. 416). He denied significant symptoms of depression (Tr. 416). He demonstrated a good range of back motion (Tr. 417). In April, 2009, Plaintiff reported level eight to ten back pain with radiating pain and weakness (Tr. 426). Neurological testing was unremarkable (Tr. 427). In July, 2009, Plaintiff reported renewed back pain (Tr. 415). He reported pain in at level eight to nine but denied taking pain medication (Tr. 415). Shlomo S. Mandel, M.D. recommended physical therapy and "light duty work restrictions" (Tr. 415). He advised against injections or surgery (Tr. 415). Plaintiff reported that he was "not interested in analgesic medication" (Tr. 415). In September, 2009, Plaintiff reported continued neck and back pain but was found to have

---

[2] Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." § 405(g). Plaintiff does not cite the newer material, much less argue that it provides a basis for remand.

[3] Newly submitted records duplicating those reviewed by the ALJ (addressed in II.B.1.) are omitted from discussion.

"good rehabilitation potential" and good "self-management skills" (Tr. 418).

The following month, Plaintiff was discharged from therapy after attending only one of seven sessions (Tr. 420). Treating notes from the next month state that Plaintiff was "generally athletic and capable physically" (Tr. 421). Plaintiff reported that his medical expenses were being paid by an insurance company (Tr. 421). He was prescribed Citalopram in response to his report of depression (Tr. 422).

### C. Vocational Expert Testimony

The ALJ posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> [Light work[4] with occasional climbing, balancing and stooping, kneeling, crouching and crawling . . . could not use ladders. Would have to avoid concentrated exposure to unprotected heights . . . vibrating tools and extreme heat or cold and also limited [to] simple routine repetitive tasks which require little judgment over a short period of time with no interaction with the general public and occasional interaction with coworkers. With those limitations . . . are there jobs that exist in the regional economy that such an individual could perform? (Tr. 47).

The VE responded that the hypothetical individual could perform the unskilled, light work of a packer (3,000 positions in the regional economy); bench assembler (3,200); and

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

inspector (2,500) (Tr. 47). The VE testified further that if the hypothetical individual were limited to sedentary work, he could work as a sorter (1,200); assembler (1,500); and sedentary packer (1,100) (Tr. 47-48). The VE testified that the need for a cane for walking over 20 feet would not affect the sedentary positions (Tr. 48). She testified that the need to miss more than two days of work each month would preclude all employment (Tr. 48).

In response to questioning by Plaintiff's attorney, the VE testified that the majority of sedentary jobs contained a sit/stand option, but noted that the ALJ did not include the restriction in the hypothetical limitations (Tr. 49). She testified that the need to take naps over the course of the workday would preclude all employment (Tr. 49-50).

### D. The ALJ's Decision

Citing the medical records, ALJ Sasena found that Plaintiff experienced the severe impairments of "degenerative disc disease, dysthymic disorder, and cocaine dependence in remission" but that none of the conditions met or medically equaled impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). Citing Dr. Bray's consultative findings, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 14). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [H]e should never climb ladders; occasional stooping, kneeling, crouching, vibrating tools, and extreme heat or cold; he needs a cane for walking more than 20 feet; simple, routine, repetitive tasks (requires little judgment and can be learned in a short period), no interaction with the public; and only

occasional interaction with coworkers (not as a team member) (Tr. 15).

Citing the VE's findings, the ALJ found that Plaintiff could work as a packer, assembler, and inspector (Tr. 19, 47).

The ALJ discounted Plaintiff's alleged degree of limitation. As to the back condition, the ALJ noted that Plaintiff sought emergency treatment for back pain on only two occasions in six years (Tr. 16). The ALJ observed that while Plaintiff claimed that he required the use of a cane, he did not bring one to the hearing (Tr. 15). The ALJ cited Plaintiff's report to Dr. Bray that he was able to wash clothes, pay bills, and visit family and friends, noting that it stood at odds with Plaintiff's testimony that he relied on his sister to wash his clothes (Tr. 18). The ALJ noted that despite Plaintiff's limited education, he worked in the past and admitted to ongoing efforts to obtain a job (Tr. 18).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes three arguments for remand. First, he contends that the ALJ erred by failing to order intelligence testing. *Plaintiff's Brief,* 4-5, *Docket #16.* He argues second that the hypothetical limitations posed to the VE did not fully account for his work-related mental limitations. *Id.* at 5. In his third argument, Plaintiff contends, in effect, that the ALJ's credibility determination was procedurally and substantively inadequate. *Id.* at 5-6.

### A. Intelligence Testing

In support of his argument for the need for intelligence testing, Plaintiff notes that he was placed in special education classes during his formative years and left school after eight grade. *Plaintiff's Brief* at 4. He cites Listing 12.00 which states "[s]tandardized intelligence test results are essential to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

"An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917 )("'If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests'"); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986)(ALJ authorized but not required to order additional testing "if the existing medical

sources do not contain sufficient evidence to make a determination.").

Listing 12.05 (Intellectual Disability) "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." To meet Listing 12.05, a claimant must also show one of the following: "A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;" "B. A valid verbal, performance, or full scale IQ of 59 or less;" "C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;" or, "D. A valid verbal, performance, or full scale IQ of 60 through 70," accompanied by at least two of the following "1. Marked restriction of activities of daily living;" or, "2. Marked difficulties in maintaining social functioning;" or, "3. Marked difficulties in maintaining concentration, persistence, or pace; or, 4. Repeated episodes of decompensation, each of extended duration." *Id.*

Plaintiff's argument that intelligence testing was required to adjudicate his claim is without merit. First, he did not provide notice that he based his disability claim in part on substandard intellectual functioning. His application for benefits alleges disability due to depression and back, hand, foot, shoulder, and neck problems but makes no mention of an intellectual deficiency (Tr. 155). Even at present, Plaintiff declines to state which subsection

of Listing 12.05 he believes is applicable to his condition and has failed to show that he meets any of the criteria for intellectual disability or that the condition even creates work-related limitations. *See Evans v. Secretary of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir. 1987)(claimant bears the burden of establishing disability). The transcript showing that Plaintiff was able to work up until the 2007 car accident and could engage in a wide variety of personal activities belies his claim that he meets the requirement for disability under Listing 12.05.

      Substantial evidence easily contradicts Plaintiff's claim of an intellectual impairment. While he reported that he was placed in special education classes during his formative years, a June, 2012 consultative psychological examination showed the ability to follow instructions with an "intact memory, fund of knowledge, and concentration" (Tr. 17, 236-239). The ALJ noted that Plaintiff was able to perform household chores, use public transportation independently, and look after his elderly mother (Tr. 17). He noted further that Plaintiff was working at the time of the August, 2007 car accident (Tr. 17, 30). Plaintiff admitted that his work interruption was precipitated by the accident. While he alleges that his intellectual limitations are illustrated by the fact that he was living in a house without utilities at the time of the hearing, he testified that he preferred to live in his sister's foreclosed home rather than a homeless shelter because it was "cleaner than the shelters" (Tr. 39). The ALJ did not err in concluding that Plaintiff's personal situation was attributable to dysthymic disorder and former drug abuse abuse rather than intellectual deficiencies (Tr. 14, 17).

**B. The Credibility Determination**

Plaintiff argues, in effect, that the credibility determination is internally inconsistent. He notes that while ALJ accorded significant weight to an MRI showing the presence of degenerative disc disease, he rejected Plaintiff's allegations of limitations arising from the condition. *Plaintiff's Brief* at 4-5.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [5]

---

[5] In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Contrary to Plaintiff's argument, the ALJ's credibility determination is well explained and supported. The ALJ noted first that an MRI of the lumbar spine confirmed the presence of degenerative disc disease (Tr. 16). However, he did not err in declining to reject Plaintiff's alleged degree of limitation resulting from the condition. The ALJ cited the June, 2012 consultative examination results showing "no functional restrictions" resulting from the disc condition (Tr. 16). The ALJ noted that while the MRI findings showed the presence of disc disease, physical examination results were unremarkable and that none of the treating or examining sources recommended an evaluation by a neurosurgeon or aggressive treatment (Tr. 16). The ALJ also cited the consultative examination notes stating that Plaintiff did not require the use of a cane (Tr. 16). The ALJ did not err in finding that while the MRI established the presence of a disc condition, Plaintiff's allegations of limitations were not fully credible.

My own review of the record indicates that if anything, the RFC overstates Plaintiff's limitations. While the evidence supports the conclusion that he did not require the use of a cane, the RFC allowed for the use of a cane after walking 20 feet (Tr. 16). Neither the treating nor consultative records contain support for Plaintiff's professed physical limitations. Nonetheless, the ALJ restricted him to occasional stooping, kneeling, crouching balancing, and crawling (Tr. 15). As to the psychological limitation, the restriction to unskilled work with a preclusion on interaction with the public and only occasional interaction with coworkers fully accounts the psychological limitations found by the consultative examiner

(Tr. 15, 238-239).

Accordingly, the deference regularly accorded an ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007).

### C. The Vocational Testimony

Plaintiff also makes a one-paragraph argument that the hypothetical restrictions posed to the VE did not address his limitations as a result of depression, concentrational problems, and insomnia. *Plaintiff's Brief* at 5. He contends that the VE's reliance on an incomplete set of restrictions invalidates her job testimony *Id.* (*citing* Tr. 47).

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [his] individual physical and mental impairments." *Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *see also Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 (6th Cir. 2010)(failure to account for the claimant's full degree of mental impairment in the hypothetical question reversible error).

Plaintiff's claim that the hypothetical question did not reflect his true degree of limitation is not well taken. First, his argument fails to the extent that he assigns error to the omission of the terms "depression," "inability to concentrate," and "inability to sleep" from the question to the VE. The Sixth Circuit has rejected the proposition that the hypothetical

question must include a list of claimant's discrete maladies. *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 633 (6th Cir.2004)(hypothetical questions to VE's need not "include lists of claimants' medical conditions" so long as it reflects claimant's limitations"). While Plaintiff also seems to argue that the hypothetical question did not reflect his *professed* degree of psychological and concentrational impairment, the ALJ's rationale for rejecting a portion of the alleged limitations is well supported and articulated. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE).

My recommendation to uphold the ALJ's decision should not be read to trivialize Plaintiff personal difficulties. Nonetheless, the determination that he was capable of a range of unskilled, light work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.  CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #16] be DENIED, and that Defendant's Motion for Summary Judgment [Dock. #17] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: May 31, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 31, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen